IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

ABBOTT LABORATORIES, an Illinois
corporation,

        Plaintiff,

    v.

MYLAN PHARMACEUTICALS INC., a
West Virginia corporation,

        Defendant.

Civil Action No.  1:05-CV-00150

Judge Irene M. Keeley

**MEMORANDUM OF LAW IN SUPPORT OF ABBOTT LABORATORIES'
COMBINED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER
AND RESPONSE IN OPPOSITION TO MYLAN'S MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS**

As the Court is well aware, the parties' ongoing patent infringement dispute over Mylan's

Abbreviated New Drug Application No. 77-567 (the "ANDA") is currently pending in two

different fora -- here and in the U.S. District Court for the Northern District of Illinois.  Now that

Mylan's challenge to personal jurisdiction and venue in Illinois has been heard and rejected by

the Illinois court, however, there is no longer a reason to continue with this action, and it should

be dismissed in its entirety.

Beyond the salutary goal of avoiding needlessly duplicative litigation and the deference

accorded by law to Abbott's preferred choice of forum, two additional, critical factors counsel in

favor of dismissing this case and allowing the parallel litigation to proceed in Illinois.  First,

Mylan has answered Abbott's complaint in Illinois and has asserted several counterclaims,

including the same counterclaims raised in this action and also additional counterclaims that are

*not* a part of this case.  (*See* Mylan Pharmaceuticals Inc.'s Answer, Affirmative Defenses and

Counterclaims to Complaint, attached as Exhibit A.)  Second, the infringement inquiry relating

to Mylan's ANDA as a whole can be undertaken *only* in Illinois, because the litigation in Illinois (as a result of a new lawsuit filed there by Abbott on April 20, 2006) now concerns both the 500 mg and 250 mg dosage strengths of Mylan's proposed divalproex sodium product, while this action relates only to the 500 mg dosage strength. (*See* Complaint, attached as Ex. B.)

Given the totality of the circumstances, it is clear that the best course is for this action to be dismissed. Despite having railed against duplicative litigation in numerous prior filings, however, Mylan now inexplicably refuses to consent to dismissal. Indeed, since the Illinois court denied its motion to dismiss, Mylan has made numerous concerted efforts to dodge the Illinois court's ruling and to force the parties into the very sort of full-blown duplicative litigation that Mylan has heretofore decried. For instance, just days after the Illinois court issued its ruling, Mylan propounded identical document requests and interrogatories in both actions, and now it has moved this Court for leave to file amended counterclaims that conform to those already on file in Illinois. Mylan's antics do a disservice to both the parties and the respective courts, and they should not be condoned.

The parties are fully joined on all issues in Illinois, and the Illinois litigation in fact includes additional claims and issues that are not currently before this Court. Moreover, the Illinois court has entered a comprehensive pretrial schedule that tracks the schedule devised by this Court all the way through discovery and trial. In sum, Mylan will not be prejudiced in the slightest by the dismissal of this case. Alternatively, if the Court for some reason is not inclined to dismiss this action, it should transfer the case to the Northern District of Illinois under 28 U.S.C. § 1404(a), so that the parties can proceed in a single forum. Because this action should be dismissed or transferred to Illinois, there is no reason for Mylan to amend its counterclaims in

this case to match those already on file in Illinois, and its motion for leave to do so (Dkt. No. 51) should be denied.

## **BACKGROUND**

Six months ago, Abbott filed patent infringement actions against Mylan on the same day in both the Northern District of Illinois and this District.  Both actions share a common core of operative facts and concern whether the divalproex sodium product described in Mylan's ANDA, if allowed on the market, would infringe the claims of two patents that are owned by Abbott and that cover divalproex sodium.  Abbott's preferred forum for this patent dispute is and has always been Illinois.  Despite this preference, however, Abbott was compelled by certain immutable statutory timelines to file suit here as well, and thereby to safeguard its patent rights against a potential challenge from Mylan to litigating in Illinois.  (*See generally* Abbott's Motion to Stay (Dkt. No. 22) at 1-2; *see also* Memorandum Opinion and Order dated March 28, 2006 in the Illinois action, attached as Exhibit C, at 15.)

Hoping to avoid any unnecessary compounding of litigation, Abbott served its complaint in the Illinois action (Abbott's preferred forum) on Mylan, but chose not to serve the complaint filed here.  Had Mylan simply consented to jurisdiction in Illinois as it should have, this case would have been dismissed and there would have been no need for the Court to address it.  Instead, Mylan chose for transparently strategic reasons to answer the un-served complaint and lodge counterclaims here, while pursing a baseless challenge to jurisdiction and venue in Illinois.  One of Mylan's principal arguments for dismissal of the Illinois action was that it was duplicative of the case filed here.  (*See* Memorandum in Support of Mylan's Motion to Dismiss, or, in the Alternative, Transfer Venue in the Illinois action, attached at Exhibit D, at 2, 6-7.)

Abbott has always been candid with this Court about its reasons for filing this action and about its preference for litigating the dispute in Illinois if jurisdiction and venue were deemed

CHI-1529939v2

proper there. (*See* Ex. C at 15-16; *see also* Transcript of Proceedings, March 2, 2006, relevant

excerpts attached as Exhibit E, at 5-6.)  The parties discussed this issue during the March 2, 2006

status conference, and the Court clearly contemplated that this action would proceed in Illinois if

Mylan's motion to dismiss or transfer that action were denied.  (*See* Ex. E at 5-6, 42.)  That is

exactly what has happened.

On March 28, 2006, the Illinois court issued an order finding that Mylan is subject to

personal jurisdiction in Illinois, that venue is proper in the Northern District of Illinois, and that a

transfer of the Illinois action to this District is not warranted.  (*See* Ex. C.)  Accordingly, the

Illinois court denied Mylan's motion to dismiss or transfer the Illinois action.  (*Id.*)  The Illinois

court directly addressed Mylan's argument about duplicative litigation.  Although it

acknowledged that litigating cases on the merits in different courts is disfavored, the court found

that Abbott was justified in filing suit in two courts because of the statutory ambiguities inherent

in the Hatch-Waxman Act.  (*Id.* at 15-16 (noting that a patent holder in Abbott's position is

"stuck between a jurisdictional rock and a hard place: file suit in the forum of choice but risk

losing patent protection if the suit is dismissed for personal jurisdiction, or file suit in the only

known safe forum and incur all the inconveniences of litigating the matter in a distant

location").)  The court also noted that, although Abbott had initiated suit in two courts, it "d[id]

not seek double recovery or have any desire to litigate parallel suits."  (*Id.* at 15.)  Instead,

Abbott's manifest intention was to maintain this action only for so long as it took to resolve

Mylan's baseless challenge to jurisdiction and venue in Illinois.

After receiving the ruling denying Mylan's motion to dismiss, the parties attended a

status hearing before the Illinois court.  During that hearing, Abbott stated its belief that the

proper course was to dismiss this action in its entirety or, alternatively, to transfer it to Illinois so

that the parties could proceed in a single forum. (*See* Dkt. No. 52 at Ex. D.)  The Illinois court stated, and Abbott agrees, that it "it makes no sense that both [courts] are addressing" this dispute." (*Id.* at 7.)  Mylan's counsel indicated on the record that "I tend to agree" with the notion that the case should go forward solely in Illinois, but stated that he would need to discuss this matter with his client. (*Id.*)  Counsel for both parties spoke briefly after the hearing and agreed to consult with their respective clients and to determine if agreement could be reached about the most appropriate resolution of this action.

Since that hearing, however, Mylan has refused to stipulate to the dismissal of this action.[1]  Instead, Mylan has taken a variety of steps to move this action forward and thereby to force the parties and the respective courts into full-blown duplicative litigation.  For instance, Mylan served duplicative document requests and interrogatories on Abbott in both actions on April 7, 2006.  Subsequently, on April 12, 2006, Mylan filed its answer and counterclaims in the Illinois action -- asserting the same two declaratory judgment counterclaims made here (which concern the two Abbott patents-in-suit and six other patents that Abbott owns but has not sought to enforce against Mylan) and also two additional counterclaims alleging violations of the antitrust laws. (*See* Ex. A.)  Rather than simply agree to litigate its counterclaims in Illinois alone, Mylan then filed a motion with this Court on April 12, 2006, asking for leave to amend its counterclaims here to conform to those already on file in Illinois. (*See* Dkt. No. 51.)  As discussed below, this request is pointless and should be denied.  The Court should put an end to Mylan's shenanigans and dismiss this case.

---

[1] Abbott renewed its proposal for a stipulated dismissal as recently as April 21, 2006, to no avail. (*See* 4/21/06 email from J. Winchester to T. Kratz, attached as Exhibit F.)

## ARGUMENT

**I.     This Action Should Be Dismissed To Prevent Needless Duplication Of Resources, Effort, And Time.**

**A.     Parallel Litigation Of The Merits Of A Case Should Be Avoided.**

"Federal courts have [] recognized several prudential limits upon the exercise of the jurisdiction bestowed by Congress." *Missouri ex rel Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952 (8th Cir. 2001). One such limit is "the principle that federal courts may decline to exercise their jurisdiction in order to prevent duplicative litigation." *Id.* In addition to squandering already scarce judicial resources, litigating a single case in different fora raises the specter of two particular evils: inconsistent judgments and piecemeal litigation. *See, e.g., Day v. Union Mines, Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results . . ."). Thus, the Supreme Court has recognized that "the general principle is to avoid duplicative litigation" in the federal courts. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

In keeping with this principle, a federal suit may be dismissed for reasons of "wise judicial administration" if it is duplicative of an identical action pending in another federal court. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993); *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 529 (7th Cir. 1995) ("Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources[,]" as well as "an ample degree of discretion in deferring to another federal proceeding involving the same parties to avoid duplicative litigation"). A suit is considered duplicative if the "claims, parties, and available relief do not significantly differ between the two actions." *Serlin*, 3 F.3d at 223 (internal quotations omitted). In such cases, dismissal of the duplicative action serves the

interests of "judicial economy" and "comity between the federal courts." *See A. Arenson Holdings, Ltd. v. Shamrock Holdings of Cal., Inc.*, 2005 WL 3116089, at *1 (W.D.N.C. Nov. 22, 2005) (dismissing the case before it because "it [wa]s apparent that the instant action is duplicative with a parallel action currently being litigated in the District of Delaware"); *see also Nortek, Inc. v. Molnar*, 36 F. Supp. 2d 63, 71 (D.R.I. 1999) (holding that where a court is presented with the option of either dismissing or transferring a case, and the parties to the litigation are already engaged in identical litigation in another forum which would resolve the whole of their dispute, the appropriate remedy is dismissal, rather than transfer).

Furthermore, in considering whether to dismiss Mylan's pending declaratory-judgment counterclaims (which are also asserted in the Illinois action), the Court should bear in mind that the issuance of a declaratory judgment is discretionary, and a court can properly decline to exercise jurisdiction over a declaratory judgment suit where the declaratory judgment plaintiff might be "trying to enlist [the court] in a tactical maneuver undeserving of the expenditure of federal judicial resources." *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir. 1988). Thus, in *Holley Performance Products, Inc. v. Barry Grant, Inc.*, the court declined to exercise jurisdiction over a declaratory judgment suit where a related action for patent infringement was ongoing in another federal court. *See* 2004 WL 3119017, at *7 (N.D. Ill. Dec. 20, 2004). In declining to exercise jurisdiction, the *Holley* court observed that "[i]t would be a significant waste of judicial economies for two separate courts to adjudicate issues regarding the same patent. There is a great risk that consideration of the same patent by two separate federal courts will create inconsistent results, particularly with regard to claim construction rulings." 2004 WL 3119017, at *7-8 (dismissing declaratory judgment suit in "consideration of judicial and litigant economy" and "the just and effective disposition of disputes").

**B.    Because Mylan Is Attempting To Have Two Courts Consider The Merits Of The Same Case, Dismissal Is Appropriate.**

Although it is true that Abbott initiated lawsuits in two jurisdictions, it had a specific reason for doing so (which reason has been recognized as valid by the Illinois court), and Abbott's intention has never been to actually litigate this case through discovery and trial on the merits in two different places. (*See, e.g.*, Dkt. No. 22 at 1-2; Dkt. No. 52 at 1-3, 5-6.) Rather, this action was to be maintained only for so long as was necessary to resolve Mylan's challenge to litigating in Illinois. Now that the Illinois court has rejected Mylan's jurisdictional and venue challenges, there is no reason for the proceedings before this Court to continue. Unlike Abbott's actions, Mylan's current campaign to litigate both cases on the merits simultaneously cannot be justified. Mylan's actions do not serve the interests of either party, and they certainly do not serve the interests of the respective courts. Given the fact that the litigation will proceed in Illinois, continuing to push the case forward here can only lead to an unnecessary waste of resources and to possibly inconsistent verdicts between the two courts. This Court should put a stop to it and dismiss this case. *See Serlin*, 3 F.3d at 223; *Missouri ex rel Nixon*, 259 F.3d at 952.

There can be no doubt that matters joined before this Court are completely subsumed by the parallel litigation pending in Illinois. Both cases arise out of the filing of the ANDA, and both involve the same two Abbott patents-in-suit. Moreover, Mylan has asserted in Illinois the same two counterclaims it has asserted here, seeking a declaratory judgment regarding several Abbott patents. (*See* Ex. A.) The two actions are not interchangeable, however, because the Illinois case also presents additional issues that are not pending before this Court.

For instance, Mylan has asserted two antitrust-related counterclaims in Illinois that are not before this Court. (*See* Ex. A.) Mylan also has asserted in Illinois additional challenges to the validity of Abbott's patents-in-suit beyond those that have been raised in this action. (*Id.*)

Finally, and perhaps most importantly, this action concerns only the 500 mg dosage strength of Mylan's proposed divalproex sodium product. In March 2006, however, Abbott learned that Mylan had amended the ANDA to seek approval from FDA to market its proposed divalproex sodium product in a 250 mg dosage strength as well. On April 20, 2006, Abbott filed a new patent infringement action against Mylan relating to the 250 mg dosage strength product. (*See* Ex. B.) This new complaint was filed solely in the U.S. District Court for the Northern District of Illinois, and it has been served on Mylan.[2] Accordingly, Illinois is the *only* forum where all issues relating to the divalproex sodium product described in the ANDA can be fully and finally resolved. There can be no doubt that this litigation should proceed solely in Illinois.

Because the risk of inconsistent rulings only grows larger as these cases progress on the merits (as does the combined waste of judicial resources as both courts consider identical issues), this Court should dismiss this action now in the interests of judicial economy and comity between the federal courts. *See Arenson*, 2005 WL 3116089, at *1.

### C.   Mylan Will Not Be Prejudiced By The Dismissal Of This Action.

Dismissal of this case will not prejudice Mylan. As noted above, Mylan has asserted in Illinois all of the same claims raised here, and more. In addition, the scheduling order entered by the Illinois court tracks the dates set on March 2, 2006 by this Court all the way through discovery and trial, so there can be no argument that proceeding with the litigation in Illinois will cause any undue delay. (*See* Illinois Court's Scheduling Order, attached as Exhibit G.)

---

[2] Abbott chose to file the new lawsuit solely in Illinois because the March 28, 2006 Order entered by the Illinois court removes any doubt that Mylan is subject to general personal jurisdiction in Illinois. Thus there was no need for Abbott to file a parallel action here, as it was forced to do when it first instituted suit relating to the ANDA. The new lawsuit was assigned to the Honorable Joan Lefkow. Pursuant to the Local Rules of the district court, however, Abbott will move to have the new case reassigned to Judge Kendall as a related case to the pending, and lower-numbered, dispute relating to the 500 mg dosage form.

II.   **Alternatively, This Case Should Be Transferred To The Northern District Of Illinois For Consolidation With The Parallel Litigation Already Pending There.**

If the Court is for some reason not inclined to dismiss this action in its entirety, it should at a minimum transfer the case to the Northern District of Illinois so that the parties can proceed with the litigation in a single forum.  Pursuant to 28 U.S.C. § 1404(a), a court is authorized to "transfer any civil action to any other district . . . where it might have been brought" when doing so is "in the interest of justice."  The goal of such a transfer is "to prevent waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Baraack*, 376 U.S. 612, 616 (1964); *see also Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).  In analyzing the propriety of transfer under § 1404(a), courts have stated that the "interest of justice" inquiry puts the "focus[] on efficient functioning of the courts, rather than the private interests of the litigants." *Holley*, 2004 WL 3119017, at *7; *see also CRST Van Expedited, Inc. v. J.B. Hunt Transport, Inc.*, 2005 WL 741911, at *6 (N.D. Iowa Mar. 31, 2005) (the "interests of justice" factor includes considerations of "judicial economy").

Above all, a court weighing transfer under § 1404(a) must strive to avoid "conflict between coordinate courts," *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986), and should not "countenance the simultaneous litigation of essentially identical claims in two federal courts," *Holley*, 2004 WL 3119017, at *7.  The presence of parallel proceedings in the transferee court counsels strongly in favor of a transfer under § 1404. *See Southampton Sports Zone, Inc. v. ProBatter Sports, LLC*, 2003 WL 22358439, at *5 (E.D. Pa. Sept. 10, 2003) ("The presence of related cases in the transferee forum is a substantial reason to grant a change of venue.  The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to

- 10 -

proceed separately"); *see also Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson*, 1999 WL
592399, at *4 (E.D. Pa. Aug. 5, 1999) ("the existence of a prior related action in the transferee
district is a strong factor weighing in favor of transfer in the interest of judicial economy").

The requirements for a transfer under § 1404 are easily met here.  As discussed above, all
issues joined in this case are completely subsumed within the litigation pending in Illinois.  The
parties are the same, the two actions share a common nucleus of operative facts, and the Illinois
litigation in fact presents additional matters that must be resolved in order to achieve a complete
adjudication of the respective rights and responsibilities of the parties.  Where two cases present
substantially identical issues, and both courts properly have jurisdiction, transfer of one action is
appropriate in order to conserve judicial resources, *Southampton*, 2003 WL 2235849 at *4-5, and
prevent unnecessary conflicts among coordinate courts. *See Feller*, 802 F.2d at 729 n.7.  Under
that standard, transfer of this action to Illinois would be amply justified.

CHI-1529939v2

## CONCLUSION

For all of the reasons set forth above, Abbott respectfully requests that this Court enter an

Order dismissing this action in its entirety.  In the alternative, Abbott requests that this action be

transferred to the United States District Court for the Northern District of Illinois.  Finally,

regardless of whether this action is dismissed or transferred, there is no need for Mylan to amend

its counterclaims in this case to conform to those already on file in Illinois, and Mylan's motion

for leave to do so (Dkt. No. 51) should be denied.

Dated: April 24, 2006                                    Respectfully submitted,


                                                         s/ Stephen P. Goodwin
                                                         Stephen P. Goodwin
                                                         Goodwin & Goodwin LLP
                                                         300 Summers Street, Suite 1500
                                                         P.O. Box 2107
                                                         Charleston, WV 25328-2107
                                                         Telephone:    (304) 346-7000
                                                         Facsimile:    (304) 344-9692

Of Counsel                                               *Attorneys for Abbott Laboratories*

Daniel E. Reidy
James R. Daly
Jason G. Winchester
Melissa R. Beiting
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, Illinois 60601
Telephone:    (312) 782-3939
Facsimile:    (312) 782-8585

Laura J. Schumacher
Perry C. Siatis
ABBOTT LABORATORIES
100 Abbott Park Road
Abbott Park, Illinois 60064-6034

CHI-1529939v2

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2006, I electronically filed the foregoing *Memorandum Of Law In Support Of Abbott Laboratories' Combined Motion To Dismiss Or, In The Alternative, Transfer And Response In Opposition To Mylan's Motion For Leave To Amend Counterclaims* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

> Gordon H. Copeland
> STEPTOE & JOHNSON PLLC
> Bank One Center East
> P.O. Box 2190
> Clarksburg, WV 26302-2190

I further certify that on the same day, I served the following additional counsel by depositing true copies thereof in the United States Mail, postage prepaid:

| | |
|---|---|
| Timothy H. Kratz | Richard S. Meyer |
| Robert J. Waddell, Jr. | Lynn E. Eccleston |
| McGuire Woods LLP | McGuire Woods LLP |
| 1170 Peachtree Street | 1750 Tysons Boulevard |
| Suite 2100 | Suite 1800 |
| Atlanta, GA 30309 | McLean, VA 22102-4215 |

> s/ Stephen P. Goodwin
> _____
> One of the Attorneys for Abbott Laboratories

CHI-1529939v2